## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BRENDA M. DIEDRICH,** ) | |
| ) | |
| Plaintiff, ) | Case No. 6:13-CV-01501-CL |
| ) | |
| v. ) | **FINDINGS AND RECOMMENDATION** |
| ) | |
| **CAROLYN L. COLVIN,** ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Max Rae, P.O. Box 7790, Salem, OR 97303.  Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; John C. Lamont, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075.  Attorneys for Defendant.

**MARK D. CLARKE, Magistrate Judge**.

Plaintiff Brenda Diedrich ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  Because the Commissioner's decision is supported by substantial evidence, the decision should be **AFFIRMED**.

## BACKGROUND

Born in November, 1960, plaintiff was 41 years old on the alleged disability onset date of October 1, 2002.  Tr. 45, 347.  She speaks English and graduated from high school.  Tr. 46.  She has past work experience as cashier, a mail room attendant, a school aide, and a receptionist.  Tr. 266.  Plaintiff filed a successful application for Supplemental Security Income ("SSI") on August 26, 2009.  Tr. 114-19, 304.  She also filed an application for DIB on that date, alleging disability due to attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, major depression, arthritis, polymyalgia, osteoporosis, post-traumatic stress disorder ("PTSD"), migraine headaches, panic, anxiety disorder, and agoraphobia.  Tr. 265.

The Commissioner denied plaintiff's application for DIB initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  Tr. 134.  After an administrative hearing, held in March, 2012, ALJ Sue Liese issued a decision finding plaintiff not to be disabled from October 1, 2002, her alleged onset date, through June 30, 2008, her date last insured.  Tr. 19-31.  The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision the final Agency decision.  Tr. 1-3; 20 C.F.R. § 422.210 (2014).  This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."  *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

Page 2 – FINDINGS AND RECOMMENDATION

§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

> significant numbers in the national economy? If so, then the claimant is
> not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). If the
> claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, she found that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of October 1, 2002, through her date last insured of June 30, 2008. Tr. 21. At step two, the ALJ found plaintiff had the following severe impairments: bipolar disorder, borderline personality disorder, anxiety disorder, substance abuse in remission, chronic obstructive pulmonary disorder ("COPD"), degenerative disc disease, and bilateral shoulder degenerative disc disease. *Id.* At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment. *Id.*

The ALJ next assessed plaintiff's RFC and determined that through her date last insured, plaintiff retained the ability to perform light work with the following limitations: she can stand and walk for 8 hours total in an 8-hour workday; she is unable to climb ropes, scaffolds, and ladders; she can occasionally stoop, kneel, crouch, and crawl; she can occasionally reach overhead bilaterally; she must avoid concentrated exposure to irritants such as fumes, odors, and dust; she must avoid exposure to hazards such as dangerous machinery and open heights; she can frequently finger bilaterally; she can remember, understand, and carry out simple and detailed, but not complex, instructions; she should have no contact with the public; and she is able to work in proximity with co-workers, but is unable to work in teams.  Tr. 23.

At step four, the ALJ found that plaintiff was unable to perform any of her past relevant work.  Tr. 29.  At step five, based on the testimony of a vocational expert, the ALJ determined that through her date last insured, plaintiff could perform jobs that exist in significant numbers in the national economy, including electronics worker and price marker.  Tr. 29-30.  The ALJ therefore concluded that plaintiff is not disabled.  Tr. 30.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence.  42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  "Substantial evidence" means "more than a mere scintilla, but less than a preponderance."  *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) rejecting her credibility; (2) improperly ignoring the opinion of Leslie Morey, Ph.D.; (3) failing to call a medical expert at the hearing; (4) failing to consider plaintiff's prior applications for benefits; (5) rejecting the lay witness testimony; and (6) concluding at step five that plaintiff could perform jobs in the national economy. For the reasons discussed below, the ALJ's opinion should be affirmed.

**Plaintiff's Credibility**

Plaintiff first argues that the ALJ erred by rejecting her credibility. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to

produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)).   When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281).   It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).   Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.   *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and

any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Plaintiff testified that she is unable to work primarily due to symptoms associated with back and shoulder pain, COPD, and mental impairments. Tr. 24. She stated that she has "excruciating unbearable pain" in her muscles, joints, lower back, hips, neck, wrists, and hands, all day, all the time, and every day. Tr. 246, 265. Plaintiff stated that she cannot exercise, lift anything over ten pounds, walk for more than a quarter mile, or use her fingers or hands for more than an hour. Tr. 247, 265, 280. She testified that she "cannot put any weight on [her] wrists at all," that she has headaches that last from three hours to three days "[o]ne to two times per week," and that she needs to rest during the day to cope with her pain and mental problems. Tr. 55, 265. She also reported that she cannot keep a schedule, forgets instructions quickly, and cannot leave her home due to agoraphobia. Tr. 58-59, 265.

The ALJ considered plaintiff's testimony in light of the entire record and concluded that she was only partially credible. Tr. 28. First, the ALJ found that plaintiff's reports regarding her physical limitations were inconsistent with the medical evidence. *Id.* Conflict with the medical evidence is a legally sufficient reason for rejecting a claimant's subjective symptom testimony.

*Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, the ALJ noted that examining physician Terri Robinson, M.D., found in March of 2008 that plaintiff had no limitations in lifting objects or using her hands. Tr. 699. Dr. Robinson also opined that plaintiff could stand and walk for six hours in an eight-hour day. *Id.* These objective medical findings contradict plaintiff's allegations of debilitating physical limitations and inability to use her hands. *See* Tr. 55, 246, 247, 265, 280. The ALJ thus provided a legally sufficient reason for rejecting plaintiff's testimony regarding her physical limitations. *Carmickle*, 533 F.3d at 1161.

Second, the ALJ found that plaintiff's reports of her mental limitations also conflicted with her medical treatment record. Tr. 28. While plaintiff alleged that she could not be around others due to anxiety and would miss days of work due to her multiple personality disorder, the ALJ noted that the medical record contained "no observations of different personalities and … no indication of a report of such before the date last insured." Tr. 28, 57-58, 61, 64, 265. Less than 6 months before she testified at the hearing, plaintiff was observed by Dr. Robinson, who did not record any observation of anxiety, depression, or mania. *See* Tr. 695-99. In 2007, plaintiff also underwent extensive mental health treatment and evaluation that included individual therapy, group therapy, and medication management. Tr. 481-673. Treatment notes from this period indicate that plaintiff was fully oriented and did not exhibit dissociative symptoms to corroborate the severe mental limitations alleged. Tr. 473, 556-58, 565, 702, 747, 751, 779. On this record, the ALJ provided a clear and convincing reason for rejecting plaintiff's subjective symptom testimony regarding the severity of her mental symptoms and limitations. *Carmickle*, 533 F.3d at 1161.

Third, the ALJ found that plaintiff's testimony was contradicted by reports of her activities of daily living. A claimant's activities of daily living can support an adverse credibility

finding when they are inconsistent with the claimant's statements about her limitations. *Orn*, 495 F.3d at 639. In December, 2010, examining nurse Karalyn Pazdernik, PAC, observed that plaintiff was not in any acute distress and reported plaintiff's activity level as "moderate." Tr. 990, 992. The ALJ also noted several reports of "physical exertion" in the record. Tr. 24. For example, plaintiff reported packing boxes and moving furniture into storage in 2003, and climbing a fence in October, 2010. Tr. 408-09, 1060. Ms. Pazdernik's observations, along with evidence of plaintiff's ability to engage in robust physical activity, contradicts plaintiff's reports that she suffers from constant, excruciating pain, cannot use her hands, can lift only ten pounds, and cannot put weight on her wrists. Tr. 246, 247, 265, 280. The ALJ thus provided a third clear and convincing reason for rejecting plaintiff's testimony. *Orn*, 495 F.3d at 639. The ALJ's credibility evaluation should be affirmed.

**Opinion of Leslie Morey, Ph.D.**

Plaintiff next argues that the ALJ erred by rejecting the medical opinion of Leslie Morey, Ph.D. Dr. Morey wrote a detailed clinical report interpreting plaintiff's January 16, 2007, comprehensive personality assessment inventory ("PAI"). Tr. 662-73. She opined that plaintiff's PAI scores suggest "a person who is reporting marked distress," and that her inventory responses are associated with severe functional impairments including confusion, distractibility, difficulty concentrating, and impulsivity. Tr. 667-69. Dr. Morey also indicated that plaintiff may be too disorganized to participate meaningfully in some forms of treatment, noting that plaintiff "may react to the therapist in a hostile or derogatory manner." Tr. 671.

The ALJ did not discuss Dr. Morey's opinion, but appears to have considered her findings. Tr. 26-27. The ALJ "need not discuss all evidence" and must only "explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th

Cir. 1984). Here, the ALJ's failure to discuss Dr. Morey's opinion did not cause error because Dr. Morey did not set forth specific limitations in her clinical assessment and therefore did not provide "significant probative evidence." Rather, Dr. Morey's findings are couched in speculative language, with the disclaimer that results from the PAI "should be integrated with all other sources of information in reaching professional decisions about [plaintiff]." Tr. 662. Accordingly, the ALJ explicitly considered the opinions of the consultative and examining physicians, who each had the opportunity to review the entire medical record and who each concluded that plaintiff's limitations were not disabling.[1] Tr. 726, 730, 923, 942. On this record, the Court finds that Dr. Morey's opinion was properly considered within the evidentiary context of plaintiff's complete medical profile, and the ALJ's evaluation of the medical evidence should be affirmed.

**Failure to Call a Medical Expert**

Plaintiff also argues that the ALJ failed to comply with Social Security Ruling ("SSR") 83–20 because she failed to call a medical expert at the hearing. SSR 83–20 states, in relevant part:

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.

> The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence.

> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

---

[1] While plaintiff argues that Dr. Morey's report signals "high levels of distress and functional limitations," the consultative Agency physicians did not draw this conclusion.

> The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

Here, the ALJ considered the period beginning at the alleged onset date and ending on her date last insured. *See* Tr. 30. The ALJ credited the opinions of the Agency medical experts, who considered whether plaintiff's impairments became disabling prior to her date last insured. Tr. 27. Examining physician Nick Dietlein, Psy.D., opined in February, 2008, that plaintiff was able to understand and remember instructions, sustain concentration and persistence, engage in social interactions successfully, and manage her own funds. Tr. 726. Similarly, in March, 2008, consultative physician Peter LeBray, Ph.D., reviewed the record and concluded that plaintiff could understand and follow simple instructions, tasks, and routines, but should not work in direct contact with the public or interact closely with coworkers. Tr. 726-30. Dr. LeBray concluded that plaintiff retained the ability to perform substantial gainful activities and was therefore not disabled. *Id.* In January, 2010, Paul Rethinger, Ph.D., reviewed the record and concluded that plaintiff's medical records did not establish disability during the relevant period.[2] Tr. 923. On this record, it is clear that at least three medical experts considered plaintiff's onset date and unambiguously concluded that plaintiff was not disabled during the relevant period. The ALJ's decision not to call a medical expert at the hearing was not error, and should therefore be affirmed. *See* SSR 83-20.

---

[2] Dr. Rethinger also opined that plaintiff's mental RFC during the relevant period differed from her mental RFC during the period relevant to her SSI application. *Id.*

Page 12 – FINDINGS AND RECOMMENDATION

**Plaintiff's Prior Applications for Benefits**

Plaintiff also contends that the ALJ erred because she did not consider her December 20, 2006 and November 20, 2007 applications for DIB and SSI. The Court disagrees. Both of plaintiff's prior applications alleged a disability onset date of October 1, 2002. Tr. 329, 335. At the administrative hearing, plaintiff's attorney requested a reopening of her applications. Tr. 45. In her written decision, the ALJ accordingly performed the sequential analysis on the issue of whether plaintiff was under a disability during the period beginning October 1, 2002 and ending June 30, 2008. Tr. 19-30. The Court thus finds no error in the ALJ's treatment of plaintiff's prior applications.

**Lay Testimony of David Neibaum**

Plaintiff next argues that the ALJ erred by rejecting the lay testimony of plaintiff's fiancée, David Neibaum. The ALJ must to provide "germane reasons" for rejecting lay testimony. 20 C.F.R. § 404.1513(d)(1); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

Mr. Neibaum completed a third party function report and testified at the hearing before the ALJ on March 8, 2012. Tr. 68-73, 291-98. He stated that plaintiff was unable to maintain a regular schedule, independently take her medication, or stay focused and complete tasks. Mr. Neibaum also observed that plaintiff had difficulty managing her money and going into the community without supervision. He also opined that plaintiff had multiple personalities. Tr. 68-73.

The ALJ gave Mr. Neibaum's opinion little weight. Tr. 29. First, the ALJ noted that Mr. Niebaum's observations were made after plaintiff's date last insured. Mr. Neibaum testified that he did not meet plaintiff until September of 2008, after her date last insured of June 30, 2008. Tr. 72, 304. It was thus reasonable for the ALJ to infer that Mr. Niebaum's observations were not clearly indicative of plaintiff's symptoms and limitations during the relevant period. This was a germane reason for the ALJ to assign less weight to Mr. Neibaum's opinion. *See Lewis*, 236 F.3d at 511.

Further, Mr. Niebaum's statements were substantially similar to plaintiff's subjective symptom complaints. In rejecting plaintiff's credibility, the ALJ therefore also provided sufficiently germane reasons for rejecting Mr. Neibaum's statements. *See Molina*, 674 F.3d at 1114 (*citing Lewis*, 236 F.3d at 512 ("where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not "clearly link his determination to those reasons")). Therefore, this Court should not reverse the ALJ's rejection of Mr. Neibaum's lay opinion, because the ALJ properly rejected plaintiff's subjective symptom testimony. The ALJ's evaluation of the lay testimony should be affirmed.

**Step Five Findings**

Plaintiff argues, finally, that the ALJ's step five findings were unsupported by substantial evidence. First, she argues that the ALJ failed to properly assess erosion of the light unskilled occupational base and work adjustment factors in determining whether plaintiff could perform work in the national economy. The occupational base is the number of jobs corresponding to each rule in the Medical-Vocational Guidelines. SSR 83-10 at *3; SSR 83-14, 1983 WL 31254 at *3. Here, the ALJ did not rely upon the Medical-Vocational Guidelines at step five. Rather,

she relied upon the testimony of the vocational expert, who stated that plaintiff could perform jobs that exist in significant numbers in the national economy. The Court thus rejects this argument. *See id.*

Second, plaintiff argues that the ALJ's hypothetical to the VE did not include all of plaintiff's limitations because it did not contain limitations in persistence and their impact on her ability to complete tasks and stay focused. The Court also rejects this argument. In the Ninth Circuit, an RFC restricting a claimant to simple tasks adequately captures moderate limitations in concentration, persistence and pace when it is consistent with the medical evidence. *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008). The ALJ in this case limited plaintiff to light work with no public contact and simple and detailed, but not complex, instructions. Tr. 23. This assessment is consistent with the medical evidence of record. For example, Dr. LeBray opined, with respect to understanding and memory and sustained concentration and persistence, that plaintiff has the ability to understand and follow simple instructions and perform simple tasks and routines. Tr. 728-30. On this record, the Court concludes that the ALJ's assessment of plaintiff's RFC is supported by substantial evidence in the record and was appropriately limited.[3] *See Stubbs–Danielson*, 539 F.3d at 1173–74. The ALJ's assessment of plaintiff's RFC should be affirmed.

Third, plaintiff argues that the ALJ did not allow plaintiff's counsel to fully cross-examine the VE. Plaintiff, however, does not explain how the ALJ's treatment of plaintiff's counsel during the hearing caused legal error. The Court therefore rejects plaintiff's third argument.

---

[3] Further, plaintiff has not identified any specific restrictions or limitations in concentration, persistence, or pace established by the record; he merely points out that the record establishes "moderate" limitations in those functional areas. *See* Pl.'s R. Br. 7.

Fourth, plaintiff challenges the ALJ's reliance upon the VE's testimony regarding the number of jobs plaintiff can perform within the national economy. The ALJ, however, is entitled to rely upon the VE's expertise, which "provides the necessary foundation for his or her testimony." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218, (9th Cir. 2005). The ALJ's reliance upon the VE's testimony regarding the availability of jobs that exist in the national economy was not error, and her decision should be affirmed.

## RECOMMENDATION

The ALJ's conclusion that plaintiff was not disabled during the relevant period is supported by substantial evidence and should therefore be AFFIRMED.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. FED. R. CIV. P. 72, 6.

Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of October, 2014.

_____
MARK D. CLARKE
United States Magistrate Judge